UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
       :

**WILMINGTON PT CORP.**,

               Plaintiff,

       : **MEMORANDUM DECISION AND ORDER**

– against –

       19-CV-1557 (AMD) (LB)

**MOUSA A. KHALIL**, *et al.*,

               Defendants.
----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On March 19, 2019, the plaintiff brought this action pursuant to New York Real Property Actions and Proceedings Law § 1301 *et seq.* ("RPAPL"), seeking to foreclose on a property located at 122 Hoyt Street, Brooklyn, NY 11217. (ECF No. 1.) The plaintiff moved for default judgment of foreclosure and sale (ECF No. 21), which the Honorable Jack B. Weinstein granted on September 11, 2019 (ECF No. 24).

On November 13, 2019, defendant Mousa A. Khalil moved for a temporary restraining order or preliminary injunction enjoining the plaintiff from selling the property, and a vacation of his default. (ECF No. 27.) The next day, the Honorable Margo K. Brodie held a hearing, and stayed the auction of the property pending a determination on the motion. (ECF No. 29.) Judge Weinstein held a hearing on November 20, 2019, and issued an order vacating defendant Khalil's default, staying the auction of the property, and directing the parties to file for summary judgment following discovery on the issue of whether the "foreclosure action was time-barred under New York's statute of limitations." (ECF No. 30.) Defendant Khalil subsequently filed an answer and counterclaim. (ECF No. 31.)[1]

---

[1] This case was reassigned to me on February 12, 2020. (ECF No. 41.)

Before the Court is the plaintiff's motion for summary judgment. (ECF No. 50.)[2] For the reasons that follow, the motion is granted.

## BACKGROUND[3]

On May 8, 2007, the defendant executed a mortgage and note in favor of National City Bank ("NCB") for the property located at 122 Hoyt Street in Brooklyn. (ECF No. 51-1, Defendant's 56.1 Statement ("Def. 56.1") ¶¶ 4, 5; ECF No. 50-3 at 14-29; ECF No. 50-14, Aff. of Yonel Devico ("Devico Aff.") ¶ 8.) The note and mortgage were eventually assigned to the plaintiff by an assignment of mortgage dated September 18, 2018, which was recorded in the Kings County Clerk's Office on October 23, 2018. (Def. 56.1 ¶ 6; Devico Aff. ¶¶ 9-10; ECF No. 50-3 at 36-38.)[4]

The defendant stopped making mortgage payments. (ECF No. 51-2, Aff. of Mousa Khalil ("Khalil Aff.") ¶ 4 ("[O]n or about September 2008, I stopped making payments.");

---

[2] The plaintiff also moves to strike the defendant's answer with affirmative defenses and a counterclaim. (*Id.* at 6.)

[3] In deciding whether summary judgment is appropriate, the Court resolves all ambiguities and draws all reasonable inferences in favor of the defendant, the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). On a motion for summary judgment, the Court's consideration is limited to factual material that would be admissible evidence at trial. *Local Unions 20 v. United Bhd. of Carpenters and Joiners of Am.*, 223 F. Supp. 2d 491, 496 (S.D.N.Y. 2002). Factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Civ. R. 56.1(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Factual allegations that are not disputed are also deemed admitted as long as they are supported by the record. *Giannullo*, 322 F.3d at 140. I disregard any arguments in the Rule 56.1 statements. *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *2 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019). "Where the party opposing a motion for summary judgment fails to submit a *proper* counterstatement of material facts, the court may choose to accept all factual allegations of the opposing part[y] as true for the purposes of deciding the motion." *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, No. 09-CV-3463, 2015 WL 867010, at *5 (E.D.N.Y. Feb. 27, 2015) (quotation marks and citations omitted). Alternatively, the Court may "conduct an assiduous review of the record." *Id.* The factual recitation is based on my review of the entire record.

[4] The defendant disputes the facts in paragraph 6 of the 56.1 statement "to the extent that there is a genuine issue as to physical possession and assignee of the Note," but cites no evidence.

2

Devico Aff. ¶¶ 11-14; ECF No. 50-10 (payment history for the note lists no payments made between June 20, 2013 and February 20, 2020).) On December 17, 2018, the plaintiff's counsel mailed 90-day and default notices to the defendant, informing the defendant that he was in default, that he had 30 days to dispute the validity of the debt, and that failure to take action to resolve the matter within 90 days might result in the initiation of legal action against him. (Def. 56.1 ¶ 7; ECF No. 50-11, Affidavit of Alan Weinreb ("Weinreb Aff.") ¶¶ 7-12; ECF No. 50-12 (90-day notice); ECF No. 50-13 (default notice).)[5] The next day, the plaintiff's servicer filed information pertaining to the notices with the Department of Financial Services. (ECF No. 50-3 at 51 (proof of filing statement).)

The defendant did not make payments to cure the default (Def. 56.1 ¶ 8)[6], and the plaintiff initiated this foreclosure action on March 19, 2019 (Def. 56.1 ¶ 9; ECF No. 1).

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return

---

[5] The defendant disputes this "to the extent there is a genuine issue as to default notice requirements being satisfied," but cites no evidence.

[6] The defendant disputes this "to the extent that there is a genuine issue as to the default," but cites no evidence. The defendant admitted in his affidavit that he stopped making payments in 2008. (Khalil Aff. ¶ 4.)

3

a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (citations and quotation marks omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## DISCUSSION

"Under New York state law, three elements must be established in order to sustain a foreclosure claim: (1) the proof of the existence of an obligation secured by a mortgage; (2) a default on that obligation by the debtor; and (3) notice to the debtor of that default." *United States v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004); *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019); *see also U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (summary order) ("[A] lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt."). "[S]ummary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *Builders Bank v. Charm Devs. II, LLC*, No. 09-CV-3935, 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) (citation and quotation marks omitted).

"Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists." *Hoyer*, 362 F. Supp. 3d at 80 (quoting *Builders Bank*, 2010 WL 3463142, at *2) (internal quotation marks omitted). In his answer, the defendant raised affirmative defenses contesting the plaintiff's standing, the timeliness of the

4

plaintiff's action, and the plaintiff's compliance with notice and filing requirements. (ECF No. 31 ¶¶ 3-7.)

I conclude that the plaintiff established a *prima facie* case, and that the defendant has not established any defenses.

I. **Standing**

As an initial matter, I address the defendant's challenge to the plaintiff's standing. "Under New York law, 'a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (2d Dep't 2015)) (alterations omitted). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009)).

The defendant claims that the plaintiff has not established that it possessed the note when it commenced this action, citing allonges that refer to Dreambuilder Investments, LLC ("Dreambuilder") and Trinity Financial Services, LLC ("Trinity"), and a statement in the affidavit of Yonel Devico, the sole member of Wilmington PT, that "Windward Bora" received possession of the note. (ECF No. 51-3 at 6-7.)

In fact, the plaintiff established standing by attaching the note, with allonges, to the complaint, along with the mortgage and assignments. (ECF No. 50-3 at 14-38.) *See Windward Bora, LLC v. Allen*, No. 18-CV-5756, 2020 WL 5912392, at *2 (E.D.N.Y. Oct. 6, 2020) ("Windward attached the mortgage and unpaid Note to its complaint, along with evidence of the

5

chain of assignments and an affidavit of Note possession by Yonel Devico, Windward's sole member. . . . Annexing a Note endorsed in blank to the complaint is enough to demonstrate physical possession through delivery at the time the action is commenced, which establishes standing."); *CIT Bank, N.A. v. Moroz*, No. 16-CV-4473, 2019 WL 6352467, at *3 (E.D.N.Y. Nov. 27, 2019) ("Attached to the Certificate of Merit that Plaintiff filed contemporaneously with its complaint and summons, Plaintiff included copies of [defendant's] note, mortgage, and assignment. . . . Plaintiff has made a prima facie showing of standing based on the physical delivery of the note to it prior to commencement of this action."); *Wilmington PT Corp. v. Gray*, No. 19-CV-1675, 2020 WL 7684876, at *4 (E.D.N.Y. Oct. 22, 2020) ("Wilmington has provided a copy of an undated allonge to the Note, endorsed in blank by Trinity Financial Services, LLC. . . . Though the fact that the allonge is undated and endorsed in blank does not bear upon the validity of the note, Wilmington must still demonstrate that it was the holder of the Note prior to the commencement of the foreclosure action. . . . Having attached the Note and allonge to the Complaint, Wilmington has adequately demonstrated that it held both before asserting the claims on which it now seeks relief."), *report and recommendation adopted*, 2020 WL 7296858 (E.D.N.Y. Dec. 11, 2020).

The plaintiff also submitted a Corporate Assignment of Mortgage that shows that the mortgage was assigned to Wilmington PT from Trinity on September 18, 2018. (ECF No. 50-3 at 38.)[7] *See Hoyer*, 362 F. Supp. 3d at 79 ("Plaintiff submitted to the Court . . . a document titled 'Corporate Assignment of Mortgage' that plainly verifies that Plaintiff was assigned the mortgage on the Property on December 30, 2015. . . . Because Defendants adduce no basis for questioning the veracity of this document or the other applicable evidence presented by

---

[7] The plaintiff also submitted a Corporate Assignment of Mortgage that shows that the mortgage was assigned to Trinity from Dreambuilder on September 26, 2012. (ECF No. 50-3 at 35.)

Plaintiff . . . , the Court concludes that Plaintiff was, in fact, the owner and holder of the note and mortgage when the complaint was filed in this case."); *Moroz*, 2019 WL 6352467, at *4 ("As further evidence of the assignment, Plaintiff has also submitted an Endorsement Cover Page from the Nassau County Clerk's Office recording the assignment of Defendant Moroz's mortgage to OneWest Bank, FSB on March 29, 2010. . . . It is well established under New York law that the mortgage follows the note by operation of law.").

In addition, Yonel Devico, Wilmington's sole member, stated in his affidavit that "[t]he Note and Mortgage were eventually assigned to Plaintiff by an assignment of mortgage dated September 18, 2018 and recorded," and that "Wilmington PT is the owner and holder of the Mortgage and Note described in the Complaint." (Devico Aff. ¶¶ 9-10.) As for Devico's single reference to "Windward Bora," the plaintiff subsequently clarified that the affidavit included this name instead of the correct plaintiff's name by mistake (ECF No. 53 at 11), and this isolated reference to the wrong plaintiff is not sufficient to create a genuine issue of material fact as to Wilmington's possession of the note.

## II. The Plaintiff's *Prima Facie* Case

The plaintiff established a *prima facie* case. It produced the mortgage and accompanying note, demonstrating the obligation. (ECF No. 50-3 at 14-39); *see Builders Bank*, 2010 WL 3463142, at *2 (producing the "mortgages and accompanying notes" was sufficient proof of the obligation). The defendant does not dispute the obligation (*see* Def. 56.1 ¶¶ 4-5 ("On May 8, 2007, Defendant executed a Mortgage in favor of [NCB]. . . . On May 8, 2007, Defendant executed a Note in favor of NCB in the amount of $350,000.00.")), only that the obligation was transferred to Wilmington. As discussed above, there is no genuine dispute that the mortgage and note were transferred to Wilmington. (*See* ECF No. 50-3 at 14-39.)

The plaintiff also produced evidence of the defendant's default; Yonel Devico attested to the defendant's default (Devico Aff. ¶¶ 11-14), and the plaintiff provided payment history that shows that no payments were made between June 20, 2013 and February 20, 2020 (ECF No. 50-10). In addition, the defendant agreed that he stopped making payments. (*See* Khalil Aff. ¶ 4 ("In 2007, I entered into an agreement with [NCB] and on or about September 2008, I stopped making payments.").)

The defendant contends that the Devico affidavit "has no evidentiary value" because it is inadmissible hearsay. (ECF No. 51-3 at 7-10.) Devico, however, attested to Wilmington's practice of creating and maintaining business records, and his familiarity with those records, which form the basis of his statements about the defendant's default. (*See* Devico Aff. ¶¶ 2-7; ECF No. 53-2, Second Aff. of Yonel Devico ("Second Devico Aff.") ¶¶ 2-7.) The Court "need not resolve whether the documents fall within . . . the business-records exception . . . to the hearsay rule because, in any case, material relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (quoting *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam)). Devico's explanation for the basis of his statements demonstrates that the underlying records would be admissible as business records at trial.

Moreover, courts have accepted similar affidavits as proof of default. *See, e.g.*, *Allen*, 2020 WL 5912392, at *2 ("an affidavit from Mr. Devico asserting that [the defendant] breached her obligations under the Note, and thereby defaulted on the mortgage, beginning in July 2012," was sufficient to demonstrate the default element of the *prima facie* case); *CIT Bank, N.A. v.*

*Mitchell*, No. 17-CV-1969, 2021 WL 54081, at *3 (E.D.N.Y. Jan. 6, 2021) ("CIT Bank has . . . shown [the defendant's] default by submitting copies of the notice of default, the 90-day pre-foreclosure notice, an affidavit by . . . CIT Bank's Assistant Secretary, and an affirmation by . . . CIT Bank's former attorney, attesting to [the defendant's] default.").

Even if the Court were to disregard the affidavit, the remaining evidence in the record—including the default notices and the defendant's own statement that he stopped making payments—establishes that the defendant defaulted. *See Avail Holding, LLC v. Nanda*, No. 15-CV-486, 2017 WL 9485717, at *3-4 (E.D.N.Y. Jan. 11, 2017) ("Plaintiffs have submitted the Note, the Mortgage, the 30-Day and 90-Day Notices of Default, and the Affidavit of [the manager of Avail Holding, LLC], confirming the default. . . . Though a defendant may deny being in default and/or deny that a mortgage is accelerated and due in light of its default, summary judgment is nevertheless appropriate when a defendant admits that it has failed to make required payments and provides the court with no evidentiary basis demonstrating compliance with the terms of the mortgage at issue."), *report and recommendation adopted*, 2017 WL 543206 (E.D.N.Y. Feb. 10, 2017).

Finally, the plaintiff established the notice requirement by producing the 90-day and default notices that were sent to the plaintiff by certified and first class mail. (*See* Weinreb Aff. ¶¶ 7-12; ECF No. 50-12; ECF No. 50-13.) I address the plaintiff's compliance with RPAPL's notice provisions in more detail below.

### III. Statute of Limitations

In New York, the statute of limitations to commence a foreclosure action is six years. N.Y. C.P.L.R. § 213(4); *Freedom Mortg. Corp. v. Engel*, 2021 WL 623869, at *1 (N.Y. Feb. 18, 2021). "The statute of limitations in a mortgage foreclosure action begins to run from the due

9

date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." *Hoyer*, 362 F. Supp. 3d at 86 (quoting *Plaia v. Safonte*, 45 A.D.3d 747, 748 (2d Dep't 2007)) (internal quotation marks omitted). "However, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." *Id.* at 87 (quoting *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't 2012)) (internal quotation marks omitted). "Because the statute of limitations is an affirmative defense, under New York law, [the] [d]efendant 'bears the burden of establishing by *prima facie* proof that the limitations period has expired since the plaintiff's claim accrued.'" *Miss Jones LLC v. Stiles*, No. 17-CV-1450, 2020 WL 4704886, at *8 (S.D.N.Y. Aug. 13, 2020) (quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995)) (alterations omitted).

The defendant does not cite any evidence that the statute of limitations has run. Instead, he points out that he stopped making payments around September of 2008, and that "there may have been an acceleration sometime after that date" that would cause this action "potentially to be barred" by the statute of limitations. (ECF No. 51-3 at 12.)[8] He says, without evidence, that the plaintiff's records are not "complete" and speculates that "there may be proof of a prior acceleration" in the plaintiff's predecessors' records of which the plaintiff is "unaware." (*Id.*)

Casting "some metaphysical doubt as to the material facts" does not create a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The defendant offers no evidence to support his speculation that "there may have been an

---

[8] The plaintiff seeks to foreclose on only the defaulted payments due after March 19, 2013, six years before the commencement of this action. (*See* ECF No. 8 at 5; ECF No. 53 at 12.)

acceleration." Accordingly, the defendant has not established a statute of limitations defense by "*prima facie* proof." *See Miss Jones LLC*, 2020 WL 4704886, at *8.[9]

## IV. RPAPL's Notice and Filing Provisions

RPAPL § 1304(1) requires that

> [W]ith regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower.

N.Y. Real Prop. Acts. Law § 1304(1). Under § 1304(2), the notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2). "Proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)) (internal quotation marks omitted), *certified question accepted*, 34 N.Y.3d 1137 (2020). The plaintiff has an "affirmative obligation to establish strict compliance with RPAPL § 1304 regardless of the adequacy of [the] [d]efendant['s] briefing." *Hoyer*, 362 F. Supp. 3d at 83. The plaintiff can establish compliance "with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that

---

[9] The defendant's lack of evidence is noteworthy in this context, as "an election to accelerate must be made by an 'unequivocal overt act' that discloses the noteholder's choice." *Freedom Mortg. Corp.*, 2021 WL 623869, at *3. Although "the point at which a borrower has actual notice of an election to accelerate is not the operative event for purposes of determining when the statute of limitations begins to run" and "lack of actual notice does not as a matter of law destroy the effect of the election," the "noteholder's election must be sufficient to constitute notice." *Id.* (citations and alterations omitted). Yet the defendant seems to claim that there may have been an acceleration about which he was unaware. In any event, the absence of any evidence in support of the defendant's defense dooms it.

11

items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure." *Schiffman*, 948 F.3d at 533 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019)) (internal quotation marks omitted).

RPAPL § 1306 requires a "lender, assignee or mortgage loan servicer" to file certain information with the superintendent of financial services "within three business days of the mailing of the notice." N.Y. Real Prop. Acts. Law § 1306(1); *see also Schiffman*, 948 F.3d at 535.

The plaintiff argues that these provisions do not apply at all because the property was not the defendant's primary residence; the plaintiff cites an affidavit of service that states that a summons in this action was served on the defendant at the "defendant's actual place of residence" at 38 79th Street in Brooklyn on June 6, 2019. (ECF No. 50-6.) *See Gustavia Home, LLC v. Rutty*, No. 16-CV-2823, 2018 WL 2198742, at *4 (E.D.N.Y. May 14, 2018) ("[T]he notice required by RPAPL § 1304 does not apply . . . because the mortgaged property is not [the defendant's] primary residence."), *aff'd*, 785 F. App'x 11 (2d Cir. 2019); *but see Courchevel 1850 LLC v. Stern*, No. 17-CV-1794, 2018 WL 3193210, at *3 (E.D.N.Y. June 28, 2018) ("RPAPL § 1304 requires pre-foreclosure notice to a borrower even when that borrower no longer occupies the property in question as his or her primary residence."). The defendant does not address this argument in his opposition.

In any event, the plaintiff has demonstrated compliance with these provisions. The 90-day notice includes the contents required by RPAPL § 1304, including text stating "YOU MAY BE AT RISK OF FORECLOSURE. PLEASE READ THE FOLLOWING NOTICE CAREFULLY," a statement of the number of days and dollar amount in default, and information regarding housing counseling agencies. (ECF No. 50-12.) In his affirmation, Weinreb described

12

the Margolin & Weinreb Law Group's ("MWLG") standard practices and procedures for mailing notices to a borrower, and his familiarity with those practices. (ECF No. 50-11 ¶¶ 4-6.) Based on his review of the records relating to this file, he summarized the process by which the 90-day and default notices were generated and mailed: an MWLG employee generated the notices on a MWLG computer, printed two copies of each notice, created two envelopes—one for first class mail and one for certified mail—addressed to the defendant for each notice, completed a certified mail receipt for the mailings sent by certified mail, placed each notice in its own envelope and sealed the envelopes, placed postage on the envelopes, and delivered the envelopes to the in-house USPS bin for mailing. (*Id.* ¶¶ 7-12.) The plaintiff also produced copies of the actual mailings and envelopes, along with certified mail receipts. (ECF No. 50-12 at 5-6; ECF No. 50-13 at 4-5.)

The plaintiff demonstrated compliance with § 1306 by submitting a document verifying that it filed the required documents. (ECF No. 50-3 at 51); *see Hoyer*, 362 F. Supp. 3d at 88 ("Plaintiff has submitted a document verifying that it filed the required documents with the New York State Department of Financial Services.").

The defendant asserts only one claim about the plaintiff's compliance with RPAPL §§ 1304 and 1306: that the plaintiff cannot "substantiate[]" its compliance because "the notices . . . and filings . . . were done under the authority of FCI Lender Services, Inc."—the plaintiff's "alleged servicer"—and there is a "lack of evidence regarding FCI." (ECF No. 51-3 at 13.)[10] He does not deny that he received the notices sent 90 days before the commencement of this action,

---

[10] In his answer, the defendant raised an affirmative defense that "the notice of default used as a predicate notice to initiate this proceeding was either not sent in accordance with the express terms of the mortgage and/or said notice did not contain the express language required to declare a default under the express terms of the notice." (ECF No. 31 ¶ 6.) He also raised a separate defense that the plaintiff did not provide "proper notice as required by New York Banking Law." (*Id.* ¶ 7.) He does not discuss these more expansive notice challenges in his opposition, nor does he cite any evidence that supports them.

nor does he dispute the plaintiff's evidence demonstrating that the notices were mailed and filed properly.

The defendant does not cite any law that requires a lender who uses a servicer to produce robust evidence of its agreement with its servicer to satisfy the RPAPL notice provisions. In any event, the plaintiff has produced the Loan Servicing Agreement between FCI and Wilmington, which explicitly gives FCI authority to issue late notices and final notices to borrowers. (ECF No. 53-3 ¶ 7.)

The defendant does not mention the New York Banking Law in his opposition, and appears to have abandoned this notice defense. In any event, I find that the § 6-l notice provision does not apply because the defendant did not have a "high-cost home loan." *See* N.Y. Banking Law § 6-1 (a loan is "high cost" if its annual percentage rate exceeds eight percentage points over the yield on treasury securities, or if five percent of the total loan amount is fifty thousand dollars or more); (ECF No. 50-3 at 21 (the annual percentage rate is 8.25%, and 5% of the loan is $17,500.00); ECF No. 50-7 (the yield on treasury securities on the relevant date was 4.98)).

## V. The Defendant's Counterclaim

Because the plaintiff is entitled to summary judgment, the defendant's counterclaim for attorneys' fees is dismissed. *See OneWest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 WL 5098635, at *6 (E.D.N.Y. Aug. 31, 2015) (denying the defendant's counterclaim for attorneys' fees because the plaintiff was entitled to summary judgment), *aff'd*, 827 F.3d 214 (2d Cir. 2016); *Hoyer*, 362 F. Supp. 3d at 92 (same).

## CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is granted, the plaintiff's motion to strike the defendant's answer and affirmative defenses is denied as moot,

and the defendant's counterclaim is dismissed.  The plaintiff is directed to submit a proposed judgment of foreclosure by April 26, 2021.

**SO ORDERED.**

                                                      s/Ann M. Donnelly
                                         ANN M. DONNELLY
                                         United States District Judge

Dated:  Brooklyn, New York
         March 26, 2021